First case for today is 2014-1005, Uniloc v. eClinical. Mr. Hadley, you may begin. Thank you, Your Honor. Good morning. Our briefs in this case showed four independent grounds on which the court's order for granting summary judgment of non-infringement should be reversed. My comments this morning are going to focus on two points that cut across those grounds. First is the court's finding that the defendant's software does not satisfy the patient information hierarchy language in the preamble of Claim 1. Now, this wasn't even an issue raised in the defendant's motions for summary judgment of non-infringement. Besides that, there are two independent reasons why the court erred in finding that the claim language was not met. First, the preamble is not limiting in Claim 1 of the patented issue in this case. Simply put, there is no separate step contained within the preamble language that is not set forth in the six-step limitations that follow the preamble language that must be met in order to demonstrate infringement. And the preamble adds no other substantive requirement to the claims. On that basis, the preamble is not limiting. But even if it were limiting, the court did not apply its own claim constructions. The court held a Markman hearing and it construed all the terms that are found in the preamble. And for the patient information hierarchy, when you put all that together, it essentially means that you have information relating to the patient that consists of categories comprising pieces of patient information and subcategory that comprises data relating to the patent. There was ample evidence to support that the defendant's software, the accused software at issue in this case, satisfied those requirements under the proper construction. When you suggest that the preamble is not a limitation, Catalina Marketing, another president of this court, has held that when the claim refers back in the body of the claim and needs the preamble to provide the antecedent basis for terms later used in the body, that's a strong indicator that the preamble is, in fact, a limitation. And doesn't, for example, Claim 1 do that quite clearly? It does and, Your Honor, I agree with you that it is a strong indication. But in this case, the way the claim is formatted with the steps, the steps essentially define what is set forth in the preamble. So, in other words, the preamble says this is a method in a computer system for creating a patient information hierarchy and here's how you do it in these six steps. There's nothing in the preamble that adds an extra step that has to be satisfied for the purpose of demonstrating infringement. But again, even if it did, it was amply met. Dr. Cooper examined the code. He found the data structures for making the information categories such as drugs. He found the data structures for inputting subcategories under those data structures like dosages and strengths. He examined the product manuals and he actually ran the defendant's code and found exactly where and pointed in his report to the places where the categories and subcategories are found in the code when it's run. But I think the court's problem was he didn't demonstrate that it was created by the user or under the control of the user. So, if I disagree with you and say yes, the preamble is a limitation, isn't that the fatal flaw that the lower court found? It's a fatal flaw that the lower court found, but it was an error because the user does do all of these things. The parameters don't exist in a vacuum. Did Dr. Cooper explain anywhere in particular that it was the user that did it? Absolutely. In fact, during the federal certification testing, the user is required to set up the structure, essentially populate the parameters with the requirements and the subcategories, the result values, and demonstrate that this works. In fact, the first part of the procedure is the 1.01, I believe, through 1.15 or 1.16. Cox requires that the user demonstrate creating the parameters and the subparameters, essentially the framework for then going through the various test procedures. The court's problem with that was he said, well, that's kind of done in isolation from the other steps. But under cases like AB Dick, there is no proximity requirement and there's no intervening step exclusion for demonstrating infringement of method claims. If we were to go with you on this, don't you also have to establish that you demonstrated at least a question of fact that they performed the steps in the precise order articulated in the claim? It just seems like there were a number of different things the district court said, any one of which would kind of doom you on appeal. So what is your argument about how you establish the order of the steps? It's mandated by the claim language itself. The final two steps of this claim refer to linking a result, a parameter's result. But how did you demonstrate that the infringing device, which is capable of doing all of the same things, but how did you demonstrate that there is evidence that the infringing device performs these steps in the identical order? Because in theory, you could easily do C before A, right? It sort of doesn't matter. I can enter in 250 milligrams before I say it's amoxicillin. So C and A arguably could be performed in interchangeable order. It so happens that this method claim requires them to be performed in a precise order. But what is your evidence that their device actually performs them in the precise order? I don't believe that these claim limitations can be performed in random order, and here is why. I agree. I agree with you. Claim limitations can, but the method can. You could have a computer system that does exactly the same thing as the claim in terms of outcome, especially in the linking in step E and F, but yet it could perform step C before it performs step A. It would not infringe your claim. That's the problem you have. But it would still ultimately be a computer program that operated to the same end. I understand. My question to you is what evidence do you have that established, because the court was troubled by what he thought was a failure of proof in terms of the infringing device performing these steps in the identical order required by the claim, where is the evidence that that occurred? There are a number of places where that evidence exists. One of the places is the fact that Dr. Cooper looked at the code and actually determined that you can't simply enter 500 milligrams until you have the amoxicillin parameter established. He confirmed that in the code, and that's in his expert report. The second thing that he did was he looked at the defendant's manuals and showed that the manuals required you to enter a parameter, then a result value, and then to do the linking. Where is the report that he's saying that? The places in the report is at You don't cite that in your brief that I found? We do cite that in the brief. That was in the Basically, your case hangs on Dr. Cooper. Well, it hangs on Dr. Cooper and on the test procedure themselves, and that's the I understand that, but you have both parties saying that there's no showing of sequential performance of the claim steps. And the court says you're going to lose both on the industry standard argument as well as the testing argument because it's non-sequential. And the specific place in the record is at page 4127-53. But the whole sequentiality, the court's focus 4127-2? How far? 4127-4153. Well, that's a whole lot of stuff, right? And that's where Where in there does it say, in my opinion, the steps have to be performed sequentially? Well, that's required by the claim. He didn't say So where does he say the infringing product is performing them sequentially? That's where the test procedure comes in. And the only challenge of that Show me in the pages you've cited, sir, you said 4127-53. That's a whole lot of pages. And it's not that I'm unwilling to accept your averment that there's a statement in there that says, in my opinion, these accused devices perform these steps in a sequential way. But I just want you to point me to that language. He did not say in the report those exact words, that the devices have to perform Where are the words that are the exact equivalent? What he did, the equivalent, was when he went through the test scripts and he said that in Section 1.62, steps A and B are done. By the way, the court got that wrong when it failed to recognize that Dr. Cooper actually cited 1.62 for Step A. Do you want to show me what page it is? Because the fact that Steps A and B are done isn't the same thing as saying A, B, C, D, E, and F are done in order. And then he went and said the next step is done. These steps are all done. The only place where he cited anything out of order, and this was what the court focused on and what defendants focused on When you expect to criticize something out of order. He said that exactly. They argued that he cited these test scripts out of order in one of many procedures. And he didn't cite the test scripts out of order. What he did was he said The fact that he cited them out of order seems to me not relevant to whether or not he was of the view that the accused device necessarily performs the steps in a sequential fashion in the sequence of the claim. He did in the sense that he said that the devices did linking of a parameter's result value to another parameter's result value and that you can't count a But that doesn't address what the presiding judge said is that those parameter values can be plugged in in different ways. But he went through the code and he went through the manuals and showed that you can't do linking until you have a result value Just to try to get back here on one page. Can you point to the record where there's any evidence including your expert report that would show evidence that the infringing device performs all the steps in the identical order, sequential order? That was what he said And I'm not talking about attorney argument or any type of interpretation of evidence. I'm talking about the evidence itself in the record. Exhibit C to Dr. Cooper's report went through the test script and for the Will Haynes ear infection scenario. He said that in the test script the first thing that the defendants do with their software is create Is Exhibit C in the record? Yes, Exhibit C is in the record. On what page? That is in the appendix at 4216 is where Exhibit C starts if that helps you. But you need to show us where in that. And this exhibit is going to show us that the infringing device has performed the steps in identical order, correct? In combination with the certification Is that what the exhibit is going to show? I believe it does show that. Because what Dr. Cooper said is that the first thing you do looking just at the scenario for the ear infection is that you create a parameter for amoxicillin. That happens in 1.62. You then create four potential result values for amoxicillin including strength and dosage. That happens next. And then you establish the link to the patient's weight which you have previously entered as another parameter for that particular patient. The only thing he did was for the particular steps that require an operation to happen in response to an instruction from the user he cited a later step 1.64 because 1.64 is where the test script says that that data you stored earlier has to be stored as discrete data in the system. And so he went to 1.64 because that is the section that proves that the earlier steps were completed. The discrete information has to be embedded. Does it have to be embedded in the sequential order stated by the path? It not only has to be. When you say it has to be, that's attorney argument. Let me answer it this way. I think what Judge Raina was asking for was for you to pinpoint the point in the record where we can say, oh, the district court was wrong when it says that there's no evidence showing sequential requirements. I guess the answer to your question, Your Honor, is that sure, somebody could take this software and use it for any odd reason. I mean, there's nothing that prevents somebody from probably putting in a link or a result value before you have something to link. But the point is that during the particular... Isn't that the problem? Because you have to show that someone actually did plug all of the information in in the sequence of the path. Now, you've just told me it's possible for someone to run a program that plugs the information in non-sequentially. Correct. And the reason that we... The fact that the system, and here the method, is capable of being infringed is irrelevant, right? You have to show an act of infringement. I agree with all of that. And where we showed active infringement was when the defendant demonstrated the use of their software during the test procedure, they ran the script in order and they performed the steps in order. And Dr. Cooper showed that. So, yes, even if the software were potentially capable... There's a disagreement on that because, I mean, the analysis of the district court shows that there was one step out of order. That's correct. And that's laid out in the district court opinion, laid out in the briefs, and if we happen to agree with that, then you're out of luck, right? If you agree with the district court, then I'm out of luck. I mean, on that particular point. On that particular point. But the reason why the court got that wrong was because it misunderstood Dr. Cooper's report. Again, what Dr. Cooper did was in order to satisfy the claim limitations in sequential order, showing that the computer actually performed an operation, he did cite the later step 1.64. Well, you would have thought, I mean, Dr. Cooper performed his expert opinion here after he had the claim interpretation. He knew that the patentee and the adversary both agreed that these claims required sequential performance of the steps. I mean, you know, ordinarily, in a method claim, you don't have to perform the steps in order to get it there. But this one, you, on behalf of your client, agreed. So you would think if there's one point that your expert is going to nail down, absolutely nail down, beyond any doubt, is the fact that this system, in running these tests, performed it in a sequential manner. And we thought it was nailed down because the linking step requires taking a parameter's result value and linking it to someplace else. You just agreed with me that those parameters can be introduced into the method in varying orders. If somebody took... The fact that you have a summation at the end that shows all the data is collected doesn't go... prove to me, for at least, that the data was inputted in the required specific order. But during the test procedure, it was. And again, the court misread Dr. Cooper's analysis because... They're talking about the test procedure in order to get the certification that did have open seal approval? Exactly. Exactly, because again, all Dr. Cooper did was go to the procedure that... That brings us back to the question of whether we agree or disagree with the district court analysis. Yes. And again, what he did was he cited the procedure that showed that in the previous steps, these actions actually took place within the computer and were stored as discrete data in the earlier steps, demonstrating what... Sadly, you've exhausted all of your time, all of your rebuttal time. You're two and a half minutes over. I'm going to have to move on and give the appellee a chance. Hopefully, I'll try and even out time. Mr. Kelly, are you first? Mr. Arzada. I'm sorry. Mr. Arzada. How do you say your last name, please? Arzada. Arzada. May it please the court, counsel, thank you for letting me appear today representing eClinical Works. As the court has noted, this case involves one method claim that is not infringed, and it is our belief, both at the district court and now, that there's a lack of evidence upon which a tribal issue of fact would exist. Right. It would be helpful for me if you moved right into what seems to be the potential Achilles heel for your adversary here because he has, I think, agreed with the analysis that if the district court was correct in the way it looked at the test that your client planned to satisfy what I'll call the good housekeeping seal of approval thing, that the district court was wrong in saying that that evidence showed performance in a non-sequential way. Your Honor, I'm going to answer that question in a couple of different ways. The first is a record citation, A3098. This is directly from the CCHIT test scripts, and it may be 3099. It says, if the applicant wishes to run scenarios in a different order, or if the applicant chooses to execute test steps contained within the scenarios in a different order to accommodate workflow of the application, the applicant must advise the CCHIT proctor in advance. What that tells me in the court is that CCHIT... Where is that on? I'm looking at 3098. Note to applicants, is that where you're talking about? Scenarios are intended to be run... Yes, note to applicants, Your Honor. It says scenarios are intended to be run consecutively. If the applicant wishes to run scenarios in a different order, is that what you're talking about? Yes, Your Honor. And so my point here is that CCHIT certification can be obtained using a different order than even Dr. Cooper put in his report. There is no evidence of the who, what, where, when, and why of how eClinical Works was certified. There's no evidence here of actually how eClinical performed whatever it performed to satisfy the standard, right? That's correct, Your Honor. So the argument is that the standard itself proves necessarily that you perform the steps in a sequential manner. That's their argument. That's their argument. But certification does not prove that because the steps may be performed out of order and certification is still obtained so long as you tell the proctor in advance. Mr. Navani in his deposition, the CEO of my client, was not asked, how did you get certified? What were the scripts that you ran? Who did the certification? When was that taken? His deposition was taken? His deposition was taken, yes. It was taken in Boston, or Westboro, Massachusetts. And so that's the type of evidence that you would put forth if you were to say that qualifying with the CCHIT standard was the equivalent of infringement. Now, you can take that a step further and say, is there proof that these test scripts line up with the claims? I look at the district court's analysis and agree with it completely, that there is not a complete congruity between the claim and the test script. And so from that standpoint, there is insufficient evidence to prove infringement based upon certification of the CCHIT standard. When you actually dig into evidence of use, the record is clear. Counsel admitted at oral argument on summary judgment that there were no depositions of doctors taken. There are no affidavits of use by a medical health professional. The only potential evidence of use was the deposition of my client, as it relates to the clinic courts. Pulse had their own deposition. I will let their counsel address that. But the questions to my client were such as, and I'll give the record citations in a moment, did you perform testing? The answer, yes, was we performed regression testing. But they did not ask how was the testing done? Who performed the testing? When was it done? Give me the specific instances. Show me the order in which it was tested. And in particular, which functionality of the software were we testing? Because a product like this has thousands and thousands of features. It's impossible without some evidence which feature breached or infringed this method. There's no showing of that. And that's the type of evidence that would be required to take this case to summary judgment. And the fact that your client's software is capable of being adjusted, if you will, so that it would perform the steps of this particular method claim consequentially is not pertinent, right? Yes, Your Honor. It is not pertinent. And that gets you back to the EPAS decision from this court, which said trying to find disparate teachings from various portions of a user's manual is not enough. And to be clear, your software might actually be written in a way such that the system, every time it's used, does in fact perform these steps in this identical order. But the bottom line conclusion of the district court here was that there was no evidence in the record that established that. That's correct, Your Honor. There is no evidence in the record. So it may even, I mean, I'm not going to ask you whether it does, and I hope you don't know the answer for benefit of your client, so I'm not going to ask the question. I do not, yes. But it may well be that this software was written in exactly this order. The problem is the burden of proof is on the patentee to show that. And they had, despite having the code, right? They had the code? Yes, Your Honor. Despite having the code, that nobody actually testified that the code performed all the steps in this order. That's correct. It struck me that a typical case like this that I've seen before, there had been more discovery. Now here, there was a wide discovery request, right? There was a wide discovery request. And it was a motion to compel, and then that was denied, and there's no appeal on that issue. So we're left with, for example, I would have expected there to be evidence about what the industry standard is for testing software. But because part of your adversary's argument is that you, your client agreed that you fully tested this. And so I said, well, you must of necessity have tested it in some way to make certain that it could run in an infringing way. But we just don't have the who, what, where, why of how that happened. And we don't, I guess, I'm going to conclude by asking the court to affirm the summary judgment because there is a lack of evidence to create a tribal issue of fact. Thank you. Thank you, Mr. Kelly. Mr., I'm sorry, I got you wrong. Mr. Arzeda. Arzeda. Thank you. Mr. Kelly, I'd like you to start by focusing on any issues. I mean, I think that Mr. Arzeda covered pretty well the issues he covered. Are there additional issues unique to your client that you think the court ought to be aware of? Yes, Your Honor, briefly, and you raised it. I can distinguish myself from eClinical or Pulse and get to the fundamental issue about the CCHIT. There is nothing in the CCHIT that requires a software maker to give the functionality to a user to create parameters, design their own hierarchy. Judge Fitzgerald noted that. But beyond that, just saying that, Pulse stated in its answer affirmatively at paragraphs 30 to 32 in a public document, we do not allow our customers to make parameters. We even added an affidavit to our summary judgment. We are not afraid of losing our certification because we don't. We sell to small practices. It would create liability nightmares for us to allow that kind of capability. So we actually affirmatively stated, and I can stand here before the court and tell them we don't do that functionality because the CCHIT doesn't ask for it. That's the fundamental question, and that's all I would say. Okay. I just make one comment, Mr. Kelly. I found some of the language in your brief a little over the top. I mean, inexcusably corrupt, et cetera, et cetera. You can be critical of somebody else without sort of overdoing it. That's just my comment. Thank you. Okay. Thank you, Mr. Kelly. Mr. Hadley, even though I'll give you maybe one or two minutes of rebuttal, let's see if there's anything you need to cover because I have to try to keep the time even. Thank you, Your Honor. I just want to make three quick points. First of all, while I suppose somebody can operate software in any way, I want to be clear that if you try to run this software and do linking before you had a parameter to link and a result value to link, it would introduce an error into the software. And defendants, again, Dr. Cooper, for the exact use, did show that it was performed in the precise order during the CCHIT certification. I know that the court, the district court, disagreed with that. That resulted from the district court misunderstanding why Dr. Cooper cited 1.64. He didn't cite 1.64 to show that a parameter was created and a result value was created after linking. That would make no sense. It would be like saying that you have to measure the distance between points A and B before you know where points A and B are. It just can't happen. And that's why he cited 1.64 to show that A was created and B was created earlier and stored as discrete data. And my final point is that even though Dr. Cooper did not highlight in his report with an express statement that says, in my opinion, these steps are performed in order, it was implied throughout his report, and there is no law that I'm aware of that requires an expert to say in connection with a method claim that steps are performed in order, in my opinion, in order to survive summary judgment when the facts and evidence... Here he was giving his opinion on infringement. He was telling us that in his judgment, the accused, the defendant's software infringed. Correct. And it can't infringe unless the steps are performed sequentially. So I'll be perfectly fair in being a little critical today, sir. I mean, I'm a little critical of your adversary by his brief. I hope in the future you'll be a little more attentive to jurisdictional considerations. I mean, put the court through a certain amount of what I would call nuisance in order to get you all to straighten up and file a proper notice of appeal. I apologize for that, Your Honor. We were in a kind of a predicament. I understand the basis for a possible misunderstanding, but the short of the matter is when you all filed your joint stipulation for a proper final judgment, it certainly undercut any ground that you would have to believe, to think, that you could get access to Rule 42. Understood. Thank you very much. All right. The case is taken under submission.